

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 2, 1949

Hon. Pearce Johnson, Chairman
Committee on State Affairs
House of Representatives
Austin, Texas

Dear Sir:

Opinion No. V-801

Re: Legislative authority
to enact S.B. No. 87,
relating to issuance
of bonds by Robertson
County to fund out-
standing scrip.

We have received your letter of March 18, 1949, which
is quoted, in part, as follows:

"The Committee questioned the necessity of
the bill, and moved that it be sent to the At-
torney General for a report as to whether or
not the bill was necessary. In other words,
are we giving authority to do something that
is already permitted?"

We are not in a position to answer your question as to
whether this bill is necessary. That is a fact question which
goes to the merits of the bill rather than its validity. It
is assumed that you wish to know whether the proposed bill is
constitutional, and, if so, whether it accomplishes something
not already provided for in existing statutes.

The proposed bill is a special law dealing only with
Robertson County. In Section 1 thereof the Commissioners'
Court is given authority to issue refunding bonds to refund
road and bridge scrip warrants of the county which are out-
standing on the effective date of the act, with the proviso,
however, that not more than $88,000 of refunding bonds shall
be issued under the terms of the act.

Section 2 relates to the maturity dates, interest
rates, and execution of the bonds, and provides that no no-
tice of intention to issue the refunding bonds shall be re-
quired.

Section 3 makes applicable to such refunding bonds the provisions of Articles 709 to 715, inclusive, Revised Civil Statutes, relating to approval of the bonds by the Attorney General and registration thereof by the Comptroller.

Section 4 provides that all scrip warrants outstanding of the effective date of the act are validated.

Section 5 is the usual emergency clause.

An examination of the caption reveals that it fully describes the provisions of the act, and is sufficient, assuming, of course, that the act itself is constitutional.

Section 56 of Article III, Constitution of Texas, prohibits the enactment of local or special laws which, among other things, regulate the affairs of counties, or which authorize the laying out, opening, altering or maintaining of roads, highways, streets or alleys. This prohibition applies to all local and special laws "except as otherwise provided in this Constitution."

It is evident that this positive inhibition would preclude the valid enactment of the bill under consideration unless authority therefor is found elsewhere in the Constitution. Section 9 of Article VIII of the Constitution relates to certain county taxes, among which is the tax for road and bridge purposes. This section provides, in part, as follows:

"And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

If the proposed act in question comes within the purview of the above-quoted provision, then its enactment is not prohibited by Section 56 of Article III. In the case of Henderson County v. Allred, 120 T. 483, 40 S. W. (2d) 17, the Supreme Court had for consideration the validity of a special road law enacted for Henderson County,

similar to the proposed law under consideration.  We quote
from the opinion of the court as follows:

"The act in question is a local or special
road law enacted for Henderson county without
local notice having been given.  Under its
terms the commissioners' court of Henderson
county was authorized to fund into bonds of
the county such of its legal indebtedness
chargeable against the road and bridge fund
as existed January 1, 1929, which might be
represented by script or time warrants.  It
was also provided in said act that such funding
bonds might be issued without the necessity of
submitting the question of their issuance to a
vote of the people of the county.

"  . . .

"Nor can the contention that the passage of
the local or special road law for Henderson
county is prohibited by the terms of section
56, article 3, of the Constitution, be sustain-
ed.  This section of the Constitution provides:
'The legislature shall not, except as otherwise
provided in this constitution, pass any local or
special law: * * * authorizing the laying out,
opening, altering or maintaining of roads, high-
ways, streets or alleys.'

"The above provision is a part of the origi-
nal Constitution of 1876.  Its terms operated
to prohibit the Legislature without proper no-
tice having been given from enacting any local
or special law in regard to public roads from
the date of its adoption in 1876 until Decem-
ber 19, 1890.  On the latter date, however,
section 9 of article 8 was amended.  The amend-
atory portion of this article contained the
following clause: 'And the legislature may pass
local laws for the maintenance of the public
roads and highways', without the local notice
required for special or local laws.'

"On January 7, 1907, section 9 was again
amended by changing its former terms, but the
above provision with reference to the passage
of local or special road laws was re-enacted
in the identical language in which it was
originally adopted.

"From the above-quoted provisions of the
Constitution, it will be readily seen that
local or special road laws are expressly ex-
empted from the operation of the provisions
of section 56, article 3. The power of the
Legislature to enact such local or special
laws without the required notice is there-
fore placed beyond cavil.

" . . .

" . . . If the Legislature possessed the
power to control by local or special laws the
laying out, construction, and maintenance of
public roads in Henderson county, which cannot
be doubted under the foregoing decisions, then
it must necessarily follow that it has the power
to control and regulate by such a law the ex-
penditure of all funds used for such purposes.
Undoubtedly, the Legislature might lawfully,
by local law, have made provision for the is-
suance by the county of the warrants and script
which it has now authorized to be funded into
negotiable bonds. The power to authorize the
creation of such indebtedness and to provide
the form in which it shall be evidenced neces-
sarily includes the power to authorize a change
in the form thereof.

" . . . Indisputably the Legislature had the
power to authorize Henderson county by local or
special law to issue warrants or bonds as a
means of obtaining funds to be used in the build-
ing and operation of its road system without sub-
mitting the question as to the issuance thereof

to a vote of the people of the county. This
being true, it logically follows that, where
an indebtedness has been lawfully incurred
for road purposes by Henderson county and its
obligations issued therefor in the form of
script and warrants, that the Legislature may
validly authorize the county to change such
form of indebtedness by funding the same into
the negotiable bonds of the county."

It is clear under this decision that Sections 1,
2, and 3 of proposed Senate Bill No. 87 constitute a valid
exercise of legislative power, assuming that the scrip war-
rants were validly issued.

Section 4 of the act provides that all scrip war-
rants outstanding on the effective date of the act are
validated. It has been held time and again that the enact-
ment of curative statutes constitutes a valid exercise of
legislative power, and that the Legislature can ratify
anything that it could have authorized in the first in-
stance. Tom Green County v. Moody, 116 T. 299, 289 S. W.
381; Hunt v. Atkinson (Com. App.), 18 S. W. (2d) 594; 39
Tex. Jur. 41.

It is clear that the Legislature has the power to
validate any action that it could have authorized in the
first instance; however, it does not have the power to
ratify any act which is prohibited under our constitution.
In the case of Bigfoot Independent School Dist. v. Genard,
116 S. W. (2d) 804, affirmed 129 S. W. (2d) 1213, the court
held as follows:

" . . . It is conceded, and is obvious,
that the Legislature has no power to vali-
date an act which it did not have the power
to authorize in the first instance; it can-
not ratify an act it cannot authorize. Here,
the Constitution prohibited the imposition
and levy of a tax upon the property embraced
in an independent school district except when

authorized by a majority of the taxpaying
voters of the district at an election held
for that purpose. The Legislature had no
inherent or granted power to dispense with
that constitutional requirement and author-
ize the trustee of the district to make such
levy until the voters had acted favorably
thereon, and not having the power to author-
ize the act in the first instance, it had no
power to ratify or validate it after it was
committed without authority. 2 Cooley's
Const. Lim., 8th Ed. 791; 39 Tex. Jur. p.
41, § 19; Tom Green County v. Moody, 116
Tex. 299, 289 S. W. 381."

Thus, Section 4 would have the effect of valida-
ting the scrip warrants of the county insofar as non-
constitutional objections are concerned. If there were
certain errors or omissions in the issuance of the war-
rants, but these were statutory objections and not con-
stitutional objections, then after the act would become
effective, such errors and omissions would become imma-
terial. For example, The Bond and Warrant Law (Article
2368a, V. C. S.) prohibits the commissioners' court from
making any contract calling for the expenditure of
$2,000.00 or more of any county funds without first sub-
mitting the contract to competitive bids. Advertisement
has to be made, and the successful bidder must give a
performance bond. These steps are required by statute,
and not by the Constitution. If the steps are not taken,
then under the statute the contract is void. However, the
Legislature may enact a validation statute which would
dispense with these objections.

We have said above that the Legislature does not
have the power to validate an unconstitutional act. It
is too well settled to require citation of authority that
scrip warrants are payable out of current revenues, and
that to constitute valid obligations they must be within
the reasonably ancitipated revenues of the county for the
year in which they were issued. Otherwise, they would be

unconstitutional under Section 7 of Article XI, Constitution of Texas. This section prohibits cities and counties from incurring a debt unless at the time of the creation thereof provision is made for the levy and collection of a sufficient tax to pay the same. Unless scrip warrants are within the reasonably contemplated revenues of the county, they would constitute debts within the prohibition of Section 7, and, as no tax is levied therefor, would be unconstitutional obligations. See 11 Tex. Jur. 670 and authorities cited therein.

Thus, Section 4 of the act, if it is enacted, would have the effect of validating the scrip warrants as to non-constitutional objections. It could not validate any scrip warrants which are unconstitutional.

You ask whether the act accomplishes something not already provided for in existing statutes. In the first place, as we have already pointed out, the act contains a validation provision. In the second place, although validly issued scrip warrants may be funded into bonds under Article 2368a, supra, Section 7 of the statute requires published notice of intention to issue such bonds and authorizes the filing of a referendum petition. Section 2 of the proposed act provides that "no notice of intention to issue such refunding bonds shall be required."

## SUMMARY

Proposed Senate Bill No. 87, a special road law for Robertson County which authorizes the issuance of bonds to refund certain scrip warrants of the county without the necessity of a notice of intention to issue such bonds, if enacted in the form submitted to this department, would be constitutional.

Section 4 of the act, which validates such scrip warrants, would have the effect of curing objections to

the warrants which were not constitutional in nature,
but could not validate any unconstitutional warrants.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *George W. Sparks*
George W. Sparks
Assistant

GWS-s

APPROVED:

*Price Daniel*
ATTORNEY GENERAL